IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LARRY W. BRAMLETT, et al.,
   Plaintiffs,
     v.
NEDJAD BAJRIC, et al.,
   Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-2148-TWT

ORDER

This is an action for personal injuries arising from an automobile accident. It is before the Court on the Defendants' Motion for Partial Summary Judgment [Doc. 17]. For the reasons set forth below, the motion is GRANTED in PART and DENIED in PART.

I. Background

This lawsuit stems from an automobile accident that occurred in Henry County, Georgia, on March 25, 2011. Plaintiffs Larry Bramlett and Mary Bramlett were injured a collision with a tractor-trailer driven by Defendant/Plaintiff-in-Counterclaim Nedjad Bajric, who was also injured. Many of the facts surrounding the accident remain disputed and are not at issue in this motion.

The tractor-trailer driven by Bajric was owned by Defendant Muharem Hrnic through his company DAL Express Transportation, LLC. Bajric was operating the tractor-trailer under a lease agreement whereby Hrnic leased the tractor to Defendant DSL Express Trucking, Inc. (Defs.' Mot. for Partial Sum. J., Ex. 1, the "Lease Agreement"). DSL is a Florida corporation owned exclusively by Larisa Seremet and her husband, Sanel Seremet. DSL is an interstate motor carrier registered in Indiana as its base state. DSL does not engage in intrastrate transport within Georgia and is not registered with the Georgia state revenue commissioner under O.C.G.A. § 40-2-140. At the time of the accident, DSL had in effect a liability insurance policy through Defendant Daily Underwriters of America.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

The Defendants move for partial summary judgment on several grounds. First, the Defendants contend that Daily Underwriters is not a proper defendant under O.C.G.A. § 40-2-140(c)(4) (the "Direct Action Statute"). Second, the Defendants contend that neither Hrnic, DAL Express Transportation, LLC, nor DSL is liable for negligent hiring, retention, training, and supervision of Bajric. Third, the Defendants contend that the Plaintiffs' punitive damage claims are not supported by the evidence. And fourth, the Defendants argue they are not liable for the Plaintiffs' litigation expenses. These arguments are addressed in turn.

A. The Direct Action Statute - O.C.G.A. § 40-2-140

The Defendants argue that the 2009 amendments to the Georgia Direct Action Statute prevent the Plaintiffs from joining insurers of motor carriers that do not engage in intrastate commerce in Georgia. The statute reads:

> (b) Every foreign or domestic motor carrier, leasing company leasing to a motor carrier, broker, or freight forwarder that engages in interstate commerce in this state shall register with the commissioner or a base state and pay all fees as required by the federal Unified Carrier Registration Act of 2005.
> (c)(1) Any motor carrier, leasing company leasing to a motor carrier, broker, or freight forwarder that engages in intrastate commerce and operates a motor vehicle on or over any public highway of this state shall

> register with the commissioner and pay a fee determined by the commissioner.
>
> (2) No motor carrier shall be issued a registration unless there is filed with the commissioner or the Federal Motor Carrier Safety Administration or any successor agency a certificate of insurance for such applicant or holder, on forms prescribed by the commissioner, evidencing a policy of indemnity insurance by an insurance company licensed to do business in this state. Such policy shall provide for the protection of passengers in passenger vehicles and the protection of the public against the negligence of such motor carrier, and its servants or agents, when it is determined to be the proximate cause of any injury... Failure to file any form required by the commissioner shall not diminish the rights of any person to pursue an action directly against a motor carrier's insurer...
>
> ****
>
> (4) Any person having a cause of action, whether arising in tort or contract, under this Code section may join in the same cause of action the motor carrier and its insurance carrier.

O.C.G.A. § 40-2-140. The Defendants argue that sections (b) and (c) are distinct, with section (b) dealing exclusively with interstate motor carriers, like DSL, and (c) dealing exclusively with intrastate motor carriers. Therefore, they argue, only intrastate carriers are subject to direct actions because the provisions allowing joinder are within subsection (c).

The Court concludes, however, that insurers of interstate carriers can be joined as parties under the statute. First, the statutory language itself indicates that the joinder provisions apply to both intrastate and interstate carriers. O.C.G.A. § 40-2-140(c)(4) states that "[a]ny person having a cause of action, whether arising in tort or contract, under this *Code section* may join in the same cause of action the motor

carrier and its insurance carrier." (Emphasis supplied). The phrase "Code section," as used throughout the Georgia Code, refers to the entire *section* 40-2-140.[1] The

---

[1] As an example, the Court points to O.C.G.A. § 34-9-11.1, regarding worker's compensation:

> (a) When the injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability against some person other than the employer, the injured employee or those to whom such employee's right of action survives at law may pursue the remedy by proper action in a court of competent jurisdiction against such other persons, except as precluded by Code Section 34-9-11 or otherwise.
>
> (b) In the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code section and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery. The employer or insurer may intervene in any action to protect and enforce such lien. However, the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter...

O.C.G.A. § 34-9-11.1. First, the statute itself refers to Code section 34-9-11 which firmly establishes that Code sections represent the denomination following the Chapter, Title, and Article. Next, the statute specifically references "subsection (a) of this Code section." The specific reference to a subsection *within a Code section* refutes the Defendants' contention that "Code section" as used in 40-2-140(c)(4) refers only to subsection (c). Finally, the last reference to "Code section" in subsection (b) limits the insurer's recovery under this "Code section." This reference to "Code section" must refer to the combination of subsections (a) and (b) because the insurer's right of action is contingent upon an employee bringing suit under subsection (a). The only reasonable conclusion is that "Code section," as used in the Georgia Code, refers to the entire section listed just under the Article or Chapter.

proper title for the section is Title 40, Chapter 2, Article 6A, *Section* 40-2-140. See O.C.G.A. § 40-2-140 (emphasis supplied). In the absence of any constraining language, there is no reason to think that the § 40-2-140(c)(4)'s reference to "this Code section" refers to anything but the entire code section, 40-2-140. Therefore, the plain language of the statute indicates that injured parties are able to join the insurers of interstate motor carriers.

Next, the broad language within section (c)(2) strongly supports the conclusion that the statute is intended to ensure that motorists injured in Georgia can sue a motor carrier and its insurer without regard to the carrier's scope of business. This conclusion is supported by the statement that the motor carrier's insurance policy "shall provide for the protection of passengers in passenger vehicles and the protection of the public against the negligence of such motor carrier, and its servants or agents, when it is determined to be the proximate cause of any injury." O.C.G.A. § 40-2-140(c)(2). The section further states that "[f]ailure to file any form required by the commissioner shall not diminish the rights of any person to pursue an action directly against a motor carrier's insurer." Id.

Finally, there is no indication that the 2009 amendments removed the ability to join insurers of interstate motor carriers. In Westport Trucking Co. v. Griffin, 254 Ga. 361 (1985), the Georgia Supreme Court faced the question of "whether a motorist

injured in a collision with a truck operated by a motor contract carrier engaged solely in interstate commerce may join the motor carrier's liability insurer in the motorist's suit for personal injuries." Id. at 361. The plaintiff had brought suit against an interstate motor contract carrier from Kansas for injuries sustained in an accident with one of the defendant's tractor-trailers in Georgia. The plaintiff attempted to join the carrier's liability insurer as a defendant, and the insurer objected stating that the carrier was only engaged in interstate commerce and therefore outside the scope of the Direct Action Statute. The trial court allowed the joinder, and the Georgia Supreme Court granted interlocutory appeal to the motor carrier. The high court pointed to O.C.G.A. § 47-7-58(e), the former direct action statute, which provided:

> It shall be permissible under this article for any person having a cause of action arising under this article in tort or contract to join in the same action the motor carrier and its surety, in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action, whether arising in tort or contract.

Id. at 362-63 (quoting O.C.G.A. § 47-7-58(e)). Highlighting the language "under this article," the court concluded that the statute was applicable to interstate as well as intrastate carriers. Id. at 363. The court further rejected the defendant's arguments that the Direct Action Statute violated the dormant commerce clause and was preempted by federal law. Id. at 363-64; see also Williams v. Southern Drayage, Inc.,

213 Ga. App. 895 (1995) (holding that the Direct Action Statute also allowed joinder of insurers of motor common carriers as well as motor contract carriers).

Here, Defendant DSL was acting as a motor common carrier engaged solely in interstate commerce, and Defendant Daily Underwriters of America insured DSL. According to the precedent from Westport and Williams, and in the absence of contrary authority or evidence that the 2009 amendments removed the ability to join insurers of interstate common carriers, Defendant Daily Underwriters of America is a proper party under O.C.G.A. § 40-2-140. See Lewis v. D. Hays Trucking, Inc., 701 F. Supp. 2d 1300, 1317 (N.D. Ga. 2010) ("A literal reading of [the direct action] statute might lead one to the conclusion that the 'direct action' statute would not apply at all to vehicles engaged in interstate commerce. The court, however, has located no case which so holds.").

The Defendants suggest that the Georgia Court of Appeals' decision in Johnson v. Woodard, 208 Ga. App. 41 (1993), should control the outcome here. In Johnson, the court concluded that when a carrier had been issued a certificate of convenience, its insurance carrier could be joined even if the accident occurred outside the state. Id. at 45-46. Contrary to the Defendants' arguments, the court in Johnson did not hold that insurers of interstate carriers could not be joined under the Direct Action Statute, the court only held that insurers of carriers who were not issued certificates of

convenience could not be joined under the statute. Id. After the holding in Johnson, "[i]n 2000, the legislature revised the direct action statute ... apparently to change the dubious result by which companies who dutifully filed [with the commissioner] were at a disadvantage vis-a-vis those who failed to do so." Jackson v. Sluder, 256 Ga. App. 812, 815 (2002). The Court discerns nothing in the Johnson decision that undermines the validity of Westport or Williams. Accordingly, the Defendants' motion for partial summary judgment as to Defendant Daily Underwriters of America should be denied.

  B. <u>Negligent Hiring, Retention, Training, or Supervision Claims</u>

The Defendants contend that Hrnic and DAL Express Transportation, LLC are not liable for negligent hiring, retention, training, or supervision because, at the time of the accident, Bajric was operating the tractor-trailer pursuant to the Lease Agreement with DSL. The Defendants further contend that DSL cannot be liable for negligent hiring, retention, training, or supervision because the doctrine of *respondeat superior* applies to DSL. (See Am. Answer ¶ 29)(admitting *respondeat superior*). These contentions require the Court to clarify the roles of each party at the time of the accident.

DSL hired DAL's tractor-trailer and driver, Bajric. The Court must determine the scope of this bailment relationship to determine whether DSL or DAL can be

vicariously liable for Bajric's actions at the time of the accident. See Coe v. Carroll & Carroll, 308 Ga. App. 777 (2011). "In the case of a bailment ... an employee of the bailor is a borrowed servant of the hirer (1) if the hirer had complete control and direction of the bailor's employee for the occasion, whereas the bailor had no such control, and (2) if the hirer had the exclusive right to discharge the bailor's employee." Id. at 780 (quoting Tim's Crane & Rigging v. Gibson, 278 Ga. 796, 797 (Ga. 2004)) (internal quotation marks omitted).

Here, the lease between Hrnic through DAL Express and DSL is governed by 49 C.F.R. § 376.12. That regulation requires motor carriers using leased equipment to "have exclusive possession, control, and use of the equipment for the duration of the lease" and to "assume complete responsibility for the operation of the equipment during the duration of the lease." 49 C.F.R. § 376.12(c)(1) (2012). The Lease Agreement mirrors that language and indicates that DSL assumed complete responsibility and control of the tractor-trailer at the time at the accident. See PN Express, Inc. v. Zegel, 304 Ga. App. 672, 676 (2010) (noting that federal motor carrier regulations impose strict vicarious liability upon lessee motor carriers). Further, the evidence indicates that DSL interviewed Bajric multiple times before beginning their lease agreement. (Bajric Dep. at 30-31). Additionally, DSL maintained consistent contact with Bajric while he was a driver, inspected his logs, verified his fuel receipts,

and organized his shipping routes. Therefore, DSL, as the hirer, sufficiently controlled Bajric and the trailer to invoke the borrowed servant doctrine and face vicarious liability. Accordingly, Hrnic and DAL cannot be held liable for negligent hiring or entrustment at the time of the accident because DSL was exercising control over Bajric at the time of the accident. See McKee Foods Corp. v. Lawrence, 310 Ga. App. 122, 124 (2011) (requiring that employer have control over employee in order to face vicarious liability).

Generally, under Georgia law, subjecting a defendant to vicarious liability through *respondeat superior* precludes a redundant claim of negligent hiring or retention against the same defendant. Bartja v. National Union Fire Ins. Co. of Pittsburgh, 218 Ga. App. 815, 817 (1995). Accordingly, the Plaintiffs' claim against DSL for negligent hiring is precluded. The Defendants' motion for partial summary judgment with respect to the negligent hiring claims should therefore be granted.

    C.    Punitive Damages Claims

The Defendants move for partial summary judgment arguing that there is insufficient evidence to impose punitive damages on Bajric, DSL, or Daily Underwriters. O.C.G.A. § 51-12-5.1(b) provides: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness,

oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

In automobile collision cases, punitive damages may not be awarded "where the driver at fault simply violated a rule of the road." Carter v. Spells, 229 Ga. App. 441, 442 (1997). Where, however, the collision was the result of "a pattern or policy of dangerous driving," then punitive damages can be imposed against the driver. Id. Examples of a pattern or policy of dangerous driving include a driving history with several DUIs, striking a vehicle twice and continuing to push, and driving twenty miles with serious mechanical difficulties. Frey v. Gainey Transp. Servs., Inc., No. 1:05-CV-1493, 2006 WL 3734157, at *3 (N.D. Ga. Dec. 14, 2006). Gross negligence does not support an award of punitive damages, and even a driver who was speeding, had a blood alcohol level of 0.03 percent one hour after the crash, and had drug paraphernalia in his vehicle at the time of the crash, was not sufficiently culpable to warrant punitive damages. Id. (citing Coker v. Culter, 208 Ga. App. 651 (1993)).

Here, the Plaintiffs have not produced sufficient evidence to create an issue of fact with respect to Bajric's culpability. The Plaintiffs assert that Bajric's deposition testimony "tells the story of aggressive driving, aimed at Plaintiffs." (Pls.' Br. in Opp. to Defs.' Mot. for Partial Summ. J., at 23). The Plaintiffs argue that Bajric may be liable for punitive damages because he followed them for a half mile before the

accident and did nothing to manage the gap between the vehicles. However, the evidence shows that Bajric was driving under the speed limit, and moving uphill when the encounter began, and that it was only a matter of seconds between the time when the Bramletts moved in front of Bajric and the time of the accident. (See Bajric Dep. at 149-56). Further, even drawing inferences in favor of the Plaintiffs, the facts surrounding the accident do not suggest punitive damages are appropriate. The Plaintiffs contend that Bajric tailgated them for half a mile, rammed the back of their trailer, and hit them a second time after their vehicle swerved. (See Statement of Disputed Facts in Opp. to Defs.' Mot. for Partial Summ. J. ¶¶ 4-9). The Plaintiffs also contend that Bajric told varying stories to the police and to Seremet, some of which did not conform with the physical evidence. (See id. ¶¶ 10-13). The facts suggest that Bajric may have been angry with the Bramletts for cutting him off, but the few seconds that elapsed before the accident undermine the suggestion of malice on Bajric's part. Likewise, Bajric may have been defensive or inconsistent in describing the accident, but inconsistent statements do not support a finding of malice warranting punitive damages. Additionally, Bajric's driving history shows only three speeding tickets since 2001 and does not suggest a pattern of reckless or malicious driving. (See Defs.' Mot. for Partial Summ. J., Ex. 3). The Court concludes that the evidence, viewed in the light most favorable to the nonmovant Plaintiffs, cannot support a claim

of punitive damages against Bajric. Bajric may have violated a rule of the road by following too closely, but the accident was not caused by "a pattern... of dangerous driving." See Ballard v. Keen Transp., Inc., No. 4:10-cv-54, 2011 U.S. Dist. LEXIS 5487 (S.D. Ga. Jan. 19, 2011) (no punitive damages when driver was at fault, failed to maintain a safe distance from other motorists, was speeding, and failed to keep a lookout).

Likewise, the Plaintiffs have not provided sufficient evidence to create an issue of fact with respect to punitive damages relating to Defendant DSL's negligent hiring of Bajric. To show liability for punitive damages on a negligent hiring claim, the Plaintiffs must show that DSL "had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer has flouted a legal duty to check a record showing such violations." Western Indus., Inc. v. Poole, 280 Ga. App. 378, 380 (2006) (citing Smith v. Tommy Roberts Trucking Co., 209 Ga. App. 826, 829-30 (1993)).

The Plaintiffs' evidence, which is entitled to favorable inferences, demonstrates that DSL failed to adhere to safety regulations and failed to preserve the tractor-trailer for litigation. However, the Plaintiffs' evidence does not demonstrate that DSL knew or should have known about serious violations on Bajric's driving record. Indeed, DSL obtained Bajric's driving history before hiring him, and the record only shows

three speeding tickets. (Seremet Dep. at 121). In general, the evidence adduced by the Plaintiffs against DSL is unrelated to their hiring of Bajric and unrelated to the accident at issue. For example, the Plaintiffs have demonstrated that DSL does not keep proof of the qualifications of the mechanics working on the brakes of the company's tractors. (Seremet Dep. at 118-19). The Plaintiffs claim this is relevant to the cause of the accident because Bajric was issued a citation for cracked brake pads in a DOT inspection on February 16, 2011, about a month before the accident. (Pls.' Resp. in Opp. to Defs.' Mot. Partial Summ. J., Ex. 13). The Plaintiffs note this was one of seven brake pad violations issued to DSL since it started operations in 2008. (See id.) However, the Defendants produced evidence showing that the brake pads were replaced on February 18, 2011, only two days after the citation. (See Defs' Br. in Supp. of Mot. for Partial Summ. J., Exs. 9 & 10).

The Plaintiffs have additionally provided evidence that DSL failed its 2008 new entrant safety audit by failing to ensure drivers met hours of service requirements and failing to keep records of mechanical issues. (See Pls.' Opp. to Defs.' Mot. for Partial Summ. J., Ex. 12). When questioned about the safety audit in her deposition, Larisa Seremet stated "I don't understand pass or fail... I mean I don't really understand the form." (Seremet Dep. at 70-73). There is no indication that Seremet sought to clarify her understanding of the safety audit failure. The Plaintiffs have also provided

evidence that DSL failed 23 of 34 roadside inspections, including five hours of service violations and seven brake violations. (See Pls.' Opp. to Defs.' Mot. for Partial Summ. J., Ex. 13). Additionally, after the accident, the DOT issued a warning letter to DSL noting a "lack of compliance with motor carrier safety regulations and suggests that your safety performance has fallen to an unacceptable level in the area(s) of Crash Indicator," and threatening sanctions if changes are not made. (Id., Ex. 14). Seremet further testified that DSL has no safety budget, no written training materials, no written employee manual, no written safety policies, and no written annual review of drivers. (Seremet Dep. at 105-118). The Plaintiffs have also shown the tractor-trailer was destroyed despite the receipt of three spoilation letters from the Plaintiffs' counsel. (See Pls.' Resp. in Opp. to Defs.' Mot. Partial Summ. J., Exs. 17, 18, & 19). These facts, even in the light most favorable to the Plaintiffs, do not create a question of fact as to whether DSL "had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, ... flouted a legal duty to check a record showing such violations." Western Indus., 280 Ga. App. at 380.

In J.B. Hunt Transport, Inc. v. Bentley, 207 Ga. App. 250 (1992), the Georgia Court of Appeals upheld punitive damage assessments against a driver and his carrier when the carrier's conduct was much more reckless than the conduct here. The accident occurred after the driver was swerving for several miles and then ran into a

DOT officer parked in a construction area. The evidence showed that the carrier's drivers frequently violated hours-of-service requirements, and that the carrier's policies encouraged such violations. The court noted that the driver's logbook was destroyed by the defendant carrier after the investigation into the accident had commenced. The pre-trip and post-trip inspection report was also destroyed. Additionally, the carrier did not produce the driver or his passenger as witnesses to the accident. The court concluded that a jury, making inferences against the carrier based on destroyed evidence, could have found by clear and convincing evidence that the carrier showed a "conscious indifference" to the risks its policies imposed, and that its policies led to the accident at issue, making punitive damages appropriate. Id. at 256-57. Here, on the other hand, there is no indication that DSL's policies forced Bajric to drive without regard to safety at the time of the accident.

The situation here is more like the situation in Ballard v. Keen Transp., Inc., No. 4:10-cv-54, 2011 U.S. Dist. LEXIS 5487 (S.D. Ga. Jan. 19, 2011) because here and in Ballard there is no connection between the carrier's safety violations and the accident itself. In Ballard, the plaintiff showed that the carrier committed numerous safety violations, but the Court held the violations were "irrelevant because [plaintiff] has not put forward any evidence showing that similar conduct contributed to this collision." Id. at *10. Here, although the Plaintiffs have produced considerable

evidence of DSL's safety violations, there is no indication that the safety violations contributed to this accident. DSL was cited five times in the three years leading up to the accident for brake pad issues, but the brake pads on the tractor-trailer were replaced one month before the crash. (See Defs' Br. in Supp. of Mot. for Partial Summ. J., Exs. 9 & 10). DSL was cited seven times for hours-of-service violations leading up to the accident, but Bajric's driver's logs – which have been produced, unlike in J.B. Hunt – show that Bajric was off duty for 13.5 hours the night before the crash and had only been driving for three hours when the crash occurred. (See Defs' Br. in Supp. of Mot. for Partial Summ. J., Ex. 7). The Plaintiffs suggest that DSL retained Bajric in violation of company policy against hiring drivers who have been given speeding tickets for going 20 m.p.h. over the speed limit because Bajric had once been cited for going 80 m.p.h. in a 60 m.p.h. zone. However, there is no indication that Bajric was speeding at the time of the crash or that he was a habitual speeder. Pursuant to federal regulations, DSL did obtain a driving record when it hired Bajric, and the record does not display a pattern of serious violations that should have notified DSL of any danger. (See Defs.' Mot. for Partial Summ. J., Ex. 3).

The Plaintiffs are unable to create an issue of fact with respect to their claims for punitive damages. Accordingly, the Defendants' motion for partial summary judgment should be granted with respect to the punitive damage claims.

D. Attorneys' Fees and Expenses of Litigation Under O.C.G.A. § 13-6-11

Section 13-6-11 allows a plaintiff to recover attorneys' fees and expenses where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. O.C.G.A. § 13-6-11. Bad faith implies "a dishonest purpose" and a "conscious doing of wrong." Davis v. Walker, 288 Ga. App. 820, 825-26 (2007). "Evidence that [defendants] failed to comply with mandatory safety regulations promulgated for the benefit of [plaintiffs] is some evidence that [defendants] acted in bad faith." Meyer v. Trux Transp., Inc., No. 105-cv-02686-GE, 2006 WL 3246685, at *6 (N.D. Ga. Nov. 8, 2006) (quoting Windermere, Ltd. v. Bettes, 211 Ga. App. 177, 179 (1993)). "Even slight evidence of bad faith can be enough to create an issue for the jury." City of Lilburn v. Astra Group, Inc., 286 Ga. App. 568, 571 (2007) (quoting Freightliner Chattanooga v. Whitmire, 262 Ga. App. 157, 163 (2003)).

As discussed above, the Plaintiffs have produced evidence suggesting that Defendant DSL consistently violated federal safety regulations and that DSL allowed the tractor-trailer to be destroyed before litigation. "Evidence that [Defendants] failed to comply with these regulations, which are obviously for the benefit of plaintiff and other drivers and passengers on the road, presents a question of fact as to whether [Defendants] acted in bad faith." Meyer, 2006 WL 3246685, at *6. Whether this

evidence amounts to bad faith under O.C.G.A. § 13-6-11 is a question for the jury, and a reasonable jury could decide either way. See Spring Lake Property Owners Ass'n, Inc. v. Peacock, 260 Ga. 80, 81 (1990). Accordingly, the Defendants' motion for partial summary judgment is denied with respect to the Plaintiffs' claims for attorneys' fees and expenses.

## IV. Conclusion

For the reasons set forth above, the Defendants' Motion for Partial Summary Judgment [Doc. 17] is GRANTED in PART and DENIED in PART.

SO ORDERED, this 17 day of October, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge